FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 24, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HUGO SANCHEZ-MERINO,<br><br>Defendant. | No. 4:19-cr-06065-SMJ-1<br><br>**ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS** |

Before the Court is Defendant's Second Motion to Dismiss, ECF No. 65. Defendant argues that the immigration courts that handled two of his previous removals did not have subject matter jurisdiction. This argument is clearly foreclosed by Ninth Circuit precedent. *See United States v. Bastide-Hernandez*, 3 F.4th 1193, 1196 (9th Cir. 2021). The Court thus denies the motion.

## BACKGROUND

Defendant originally came to the United States from Mexico as a teenager and remained for fourteen years. *See* ECF No. 65-1 at 1. In 1997, when he was twenty-five, he was convicted of petty theft. ECF No. 64-4 at 3. Defendant has three siblings who live in the United States, including one who is a naturalized citizen and one who is a lawful permanent resident. ECF No. 64-1 at 2.

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 1

He has previously been removed three times, as detailed below. After that, immigration authorities encountered Defendant in September 2019 when he was in Benton County jail on pending charges, leading to the indictment in this case. ECF No. 64-4 at 3.

**A.    April 29, 2000 Expedited Removal ("First Removal")**

On April 28, 2000, Defendant presented himself at the San Ysidro, California port of entry, falsely claiming to be a U.S. citizen but presenting no supporting documentation. ECF No. 64-2. At a secondary inspection, he admitted to being a Mexican citizen and claimed to have been living in the United States for the past fourteen years. *Id*. Immigration officials took him into custody and decided to execute an expedited removal order. *Id.* Defendant was removed to Mexico on April 29, 2000, about eighteen hours after being taken into custody. ECF No. 64-1 at 4.

**B.    May 2, 2000 Removal ("Second Removal")**

The next day, April 30, 2000, Defendant again presented himself at the San Ysidro port of entry, again claiming to be a U.S. citizen. ECF No. 65-2. Immigration authorities served him with a Notice to Appear to initiate formal removal proceedings before an immigration judge the same day. ECF No. 65-3.

The NTA listed his address as an immigration detention facility in San Diego. *Id*. at 1 It alleged that he was removable as an arriving alien who was not in possession of a valid entry document, because he falsely claimed to be a U.S. citizen.

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 2

*Id.* at 1. It directed him to appear for a removal hearing at an unspecified location "to be set at a later date and time." *Id.* at 1. The officer purportedly advised Defendant of the time and place of his hearing. ECF No. 65 at 2–3.

That same day, the "Deferred Prosecution Office" served a notice on Defendant that he would have a removal hearing at the "Executive Office of Immigration Review" at a "later date and time." ECF No. 65-4. This notice also listed his address as the detention facility in San Diego. *Id.* It instructed Defendant to "direct all mail to the immigration judge" to an address in San Diego. *Id.* Defendant signed the notice, but there is no indication that it was translated into Spanish. *Id.* Only one sentence (the certification of his address for receiving mail) was translated on the form. *Id.* There is no indication Defendant ever received a Notice of Hearing or other document advising him when the hearing would occur.[1] ECF No. 65-6.

Defendant appeared before an immigration judge on May 2, 2000. ECF No. 65-5. His proceedings lasted approximately seven minutes. ECF No. 66-6. Defendant acknowledged receiving the NTA and agreed to continue without an

---

[1] The immigration judge advised the group that their hearings was set to occur a few days later (either Thursday or Friday), but he had time to hear their cases that day (a Tuesday) if they wished to proceed. The judge specifically advised all respondents they would have to waive their right to receive a formal written notice of their hearing date in order to proceed that day, then immediately advised if they were ordered deported and did not appeal, they would be returned to Mexico that same evening. ECF No. 66-6.

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 3

attorney. *Id.* He admitted to the allegations in the NTA. *Id.* The IJ ordered him removed to Mexico. ECF No. 65-5. The written removal order, issued by an immigration court in El Centro, California—not San Diego—merely notes that Defendant made admissions that subjected him to removal and he "made no applications for relief from removal." ECF No. 65-5. He was removed to Mexico that evening.[2] ECF No. 65 at 4.

C.    **August 20, 2001 Removal ("Third Removal")**

On August 12, 2001, Defendant again presented himself at the San Ysidro port of entry, claiming to be a U.S. citizen and presenting a birth certificate bearing someone else's name ECF No. 65-7. Immigration officials served him with an NTA to initiate removal proceedings. ECF No. 65-8. This NTA also listed the same detention facility address in San Diego as his prior removal proceedings. *Id.* at 1. The NTA directed him to appear before an immigration judge at an unspecified location, date, and time.[3] *Id.* Officials purportedly later advised Defendant of the time and place of the hearing. ECF No. 65 at 5.

---

[2] In July 2001, immigration authorities located Defendant in a California jail. Defendant had apparently reentered the United States on May 3, 2000 (the next day). Defendant was removed again on July 23, 2001 under the May 2, 2000 removal order. ECF No. 75-1.

[3] While there is a stamp from an immigration court in San Diego (without any address) dated August 15, 2001, on the face of one copy of the NTA, there is no indication that anyone ever advised Defendant where his removal hearing would occur. *See* ECF No. 65-8.

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 4

Five days later, on August 17, 2001, immigration officials served Defendant—through a custodial officer—with a Notice of Hearing ("NOH"). ECF No. 65-9. There is no evidence that Defendant received it. *See* ECF No. 65 at 5. The NOH advised that his removal hearing would occur on August 20, 2001 at the detention facility that he was housed at, on Front Street in San Diego. ECF No. 65-9. But the NOH also directed Defendant to file any motions, applications, or other correspondence with an immigration court on West A Street in San Diego. *Id.*

Defendant appeared for a removal hearing on August 20, 2001, where the immigration judge ordered him removed to Mexico. ECF No. 65-10. For most of the hearing, the immigration judge spoke to a group of respondents as a whole. ECF No. 67-5. Defendant's individual interaction with the immigration judge lasted about three minutes. *Id*. He waived his right to counsel and admitted the allegations in the NTA. *Id*. The written removal order, issued by an immigration court on West A Street in San Diego, states only that Defendant made admissions that subjected him to removal and he "made no applications for relief from removal." ECF No. 65-10. Defendant waived his appeal. *Id.* He was removed to Mexico the next day. ECF No. 65 at 6.

**DISCUSSION**

Defendant argues that because the NTAs provided to him before his Second and Third Removals did not list the time and place of his removal hearing, subject

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 5

matter jurisdiction never vested with the immigration court. ECF No. 65 at 1. This argument was foreclosed by the Ninth Circuit in *Bastide-Hernandez*.

Defendant contends that a recent Supreme Court case supersedes *Bastide-Hernandez* and requires this Court to reach a different result. ECF No. 65 at 7 (citing *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021)). This Court disagrees. *Bastide-Hernandez* and *Niz-Chavez* are not "clearly irreconcilable," so this Court must follow the directive of the Ninth Circuit. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (Circuit precedent is overruled where "intervening Supreme Court authority is clearly irreconcilable"); *see also United States v. Sanchez*, 853 F. App'x 201, 202–03 (holding *Niz-Chavez* is not clearly irreconcilable with *Bastide-Hernandez* and *Karingithi* on this issue).

On April 29, 2021, the Supreme Court issued its decision in *Niz-Chavez*, holding that Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA)'s definition of "a" notice to appear required that the government furnish a *single* compliant document in order to invoke the stop-time rule.[4] Often,—like in this case—the government will issue an initial "Notice to Appear" which does not

---

[4] Originally, a noncitizen continued to accrue time toward the presence requirement during removal proceedings. The IIRIRA responded to concerns that this could encourage noncitizens to delay proceedings by creating the stop time rule, which deems that time stops accruing toward the presence requirement "when the alien is served a notice to appear." *See Niz-Chavez*, 141 S. Ct. at 1478–79 (quoting 8 U.S.C. § 1229b(d)(1)).

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 6

include a time or location of a hearing, and then will supplement that initial document with "piecemeal" additional documents or verbal dissemination of information. *See Niz-Chavez*, 141 S. Ct. at 1479. The majority analyzed the text of the statute, emphasizing that it frequently referred to "a" notice to appear, which, by its plain meaning, refers to a single document.

On July 12, 2021, the Ninth Circuit issued its amended opinion in *Bastide-Hernandez*.[5] The Ninth Circuit held that when a Notice to Appear is filed, jurisdiction vests with the immigration court, regardless of its compliance. *Bastide-Hernandez*, 3 F.4th at 1196 ("[T]he jurisdiction of the immigration court vests upon the filing of an NTA, even one that does not at that time inform the alien of the time, date, and location of the hearing. If this were not the case, upon the filing of an NTA jurisdiction would vest, but then would unvest if the NTA lacked required time, date, and location information, only to once again revest if a subsequent curative NOH provided that missing information. Jurisdiction is not so malleable. Jurisdiction, for all its subtle complexities, is not ephemeral. It either exists or it does not.").

---

[5] The initial opinion was issued on February 2, 2021, before *Niz-Chavez* was decided. *United States v. Bastide-Hernandez*, 986 F.3d 1245 (9th Cir. 2021). Bastide Hernandez moved for a rehearing, and both parties filed additional briefing regarding the new case law. The amended opinion does not mention *Niz-Chavez*.

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 7

Unlike *Niz-Chavez*, which focuses on interpretation of the statute, *Bastide-Hernandez* looks to the regulations to determine when jurisdiction vests. 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." A "charging document" is "the written instrument which initiates a proceeding before an Immigration Judge. . . . [including] a Notice to Appear." 8 C.F.R. § 1003.13. Both the statute and the regulations use the article "a" to quantify "notice to appear." *See* 8 C.F.R. § 1003.13; 8 U.S.C. § 1229. Neither Section 1003.13 nor 1003.14 reference the statute, much less the statute's definition of "Notice to Appear."

*Niz-Chavez* interprets the statute. *Bastide-Hernandez* interprets the regulations. *Niz-Chavez* does not mention the word "jurisdiction." *Bastide-Hernandez* analyzes jurisdiction specifically. A rule is jurisdictional only "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Gonzalez v. Thaler*, 565 U.S. 134, 141–42 (2012) (alteration in original) (internal quotation omitted). The Ninth Circuit implicitly rejected Defendant's argument that the NTA requirements in the IIRIRA were jurisdictional. It chose to amend its opinion after receiving supplemental briefing but did not change that portion of its opinion. The Ninth Circuit clearly interpreted *Niz-Chavez* more narrowly than would Defendant. Whether the Ninth Circuit would limit *Niz-*

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 8

*Chavez* to the stop-time rule or construe it more broadly is immaterial; what matters is that the Ninth Circuit would hold that the stricter interpretation of "a" Notice to Appear does not directly apply to the regulation regarding jurisdiction and does not prevent jurisdiction from vesting with the immigration court in cases such as this, where an NTA does not contain all the required information.

Defendant asks this Court to look to the regulations to determine jurisdiction, and that is exactly what the Court should do. *See* ECF No. 65 at 13 (citing *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) ("the regulations, not § 1229(a), define when jurisdiction vests."). Taking the regulations at face value, they allow jurisdiction to vest as soon as "a" Notice to Appear is filed, not when a *compliant* Notice to Appear is filed. *See* 8 C.F.R. §§ 1003.13, 1003.14.

*Bastide-Hernandez* can be reconciled with *Niz-Chavez*. This Court thus *must* find that the immigration court had jurisdiction and deny the motion to dismiss. As both parties admit, *Bastide-Hernandez* is directly on point. Because Defendant was issued NTAs for both removals, there was jurisdiction.

//
//
//
//
//

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 9

Accordingly, **IT IS HEREBY ORDERED**:

Defendant's Second Motion to Dismiss, **ECF No. 65**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this 24th day of September 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge