FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 10, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HUGO SANCHEZ-MERINO,<br><br>Defendant. | No. 4:19-cr-06065-SMJ-1<br><br>**ORDER DENYING DEFENDANT'S THIRD AND FOURTH MOTIONS TO DISMISS** |

Before the Court are Defendant's Third Motion to Dismiss, ECF No. 66, and Fourth Motion to Dismiss, ECF No. 67. Defendant is charged with being an alien in the United States after deportation and now challenges two of his three predicate prior removals. On September 30, 2021, the Court heard oral argument on the motions and took them under advisement. Because Defendant's motions raise the same issue, the Court considers them together. Having reviewed the relevant record, the Court is fully informed and denies the motions.

### BACKGROUND

Defendant originally came to the United States from Mexico as a teenager and remained for fourteen years. *See* ECF No. 65-1 at 1. In 1997, when he was twenty-five, he was convicted of petty theft. ECF No. 64-4 at 3. Defendant has three

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 1

siblings who live in the United States, including one who is a naturalized citizen and one who is a lawful permanent resident. ECF No. 64-1 at 2.

After having been previously removed from the United States three times, immigration authorities encountered Defendant in September 2019 when he was in Benton County Jail on pending charges, leading to the indictment in this case. ECF No. 64-4 at 3.

The Court has previously set forth the relevant facts in this matter in its Order Denying Defendant's Second Motion to Dismiss, ECF No. 9, and incorporates those facts herein. Because Defendant's motions focus only on his May 2, 2000 removal ("second removal") and his August 20, 2001 removal ("third removal"), the Court elaborates on those facts here.

**A.    Second Removal – May 2, 2000**

On April 30, 2000, Defendant presented himself at the San Ysidro, California port of entry, falsely claiming to be a U.S. citizen. ECF No. 65-2. This was Defendant's second attempt in two days to fraudulently enter the United States. Immigration authorities served him with a Notice to Appear to initiate formal removal proceedings before an immigration judge the same day.[1] ECF No. 65-3.

---

[1] The NTA charged Defendant as being removable because he falsely claimed to be a U.S. citizen without supporting documentation and had been previously removed in the last five years. ECF No. 65-3.

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 2

On May 2, 2000, Defendant appeared before an immigration judge ("IJ") in El Centro, California for a group removal proceeding. ECF No. 65-5. He was the first respondent and his individual hearing lasted approximately seven minutes. ECF No. 66-6. Defendant agreed to proceed without an attorney and admitted to the allegations in the NTA. *Id.* The IJ verified that Defendant had no spouse or children living in the United States. *Id.* At no point did the IJ advise Defendant that he could withdraw his application as an alternative to removal. *Id.*

Ultimately, the IJ ordered Defendant removed to Mexico. ECF No. 65-5. When asked whether he wished to appeal the decision, Defendant responded: "no." *Id.* The written removal order merely notes that Defendant made admissions that subjected him to removal and that he "made no applications for relief from removal." ECF No. 65-5. The order further notes that Defendant waived his right to appeal the removal order. *Id.* He was removed to Mexico that evening. ECF No. 65 at 4.

**B.    Third Removal – August 20, 2001**

On August 12, 2001, Defendant again presented himself at the San Ysidro port of entry, claiming to be a U.S. citizen and presenting a birth certificate bearing someone else's name. ECF No. 65-7. Immigration officials served him with an NTA to initiate removal proceedings. ECF No. 65-8. Five days later, on August 17, 2001, immigration officials served Defendant—through a custodial officer—with a

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 3

Notice of Hearing ("NOH"), which advised that his removal hearing would occur at the detention facility that he was housed at.

On August 20, 2001, Defendant appeared before an immigration judge in San Diego, California. ECF No. 65-10. For most of the hearing, the immigration judge spoke to the group of respondents together. ECF No. 67-5. Defendant's individual interaction with the immigration judge lasted approximately three minutes. *Id*. He waived his right to counsel and admitted the allegations in the NTA. *Id*. He told the IJ he had never had legal status or applied for amnesty, but that he had a sister in the United States who was an "American or immigrant."[2] *Id*. The IJ never informed Defendant of any possible relief, although he did later advise the group that they were not eligible for voluntary departure as a matter of law. *Id*. The IJ also stated that if they accepted the removals as final, "the immigration officers will send you people from Mexico back to Mexico tonight," while those who appealed would remain in the United States. *Id*.

The written removal order states only that Defendant made admissions that subjected him to removal and that he "made no applications for relief from removal." ECF No. 65-10. The order further notes that Defendant waived his appeal. *Id*. He was removed to Mexico the next day. ECF No. 65 at 6.

---

[2] As noted, at that time of the third removal hearing, Defendant had a sister who was an American citizen and a brother who was a lawful permanent resident.

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 4

## LEGAL STANDARD

A valid prior order of removal is a predicate to a violation of 8 U.S.C. § 1326. *United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014). Thus, a defendant charged with illegal reentry can defend against the charge by attacking the validity of the prior removal. *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). To successfully challenge the validity of an underlying removal order, a defendant must demonstrate: (1) that he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the removal proceedings at which the order was issued improperly deprived the noncitizen of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). To show fundamental unfairness, the defendant must show that his "due process rights were violated by defects in his underlying [removal] proceeding," and that "he suffered prejudice as a result of those defects." *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012) (internal quotation marks omitted).

## DISCUSSION

Defendant argues that both his second and third removal orders are void because the immigration courts violated his due process rights. *See generally* ECF Nos. 66 & 67. Specifically, Defendant assigns due process violations to the IJs'

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 5

failures to advise Defendant of his eligibility to withdraw his application for admission as an alternative to removal. ECF Nos. 66 at 8; 67 at 6. Defendant further claims he was prejudiced by each asserted due process violation. ECF Nos. 66 at 9; 67 at 8. Because the Court finds Defendant cannot establish prejudice, the Court assumes without deciding that Defendant was denied due process when the IJs failed to advise him that he could withdraw his application for admission.[3]

### A. Prejudice

Even if a defendant can show he was denied due process, he still bears the burden to show that he suffered prejudice as a result of the deprivation. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004). Showing prejudice in this context does not require the noncitizen "show he actually would have been granted relief," but instead requires a showing "that he had a plausible ground for relief from [removal]." *Id.* Defendant cannot meet this burden for either removal.

#### 1. Framework for withdrawal of an application

To assess whether the asserted due process violations resulted in prejudice, a court must first "review the framework authorizing IJs to permit aliens to withdraw

---

[3] Because the Court assumes Defendant was denied due process, Defendant's challenges to his second and third removal orders are also assumed to be properly before this Court. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001) (a waiver of appeal is not valid if the removal proceeding did not comport with due process).

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 6

their applications for admission." *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1019 (9th Cir. 2011). The Court pauses to do so here.

Prior to the enactment of the Illegal Immigration Reform Immigrant Responsibility Act of 1996 ("IIRIRA"), "both IJs and immigration officers exercised their discretion to permit aliens to withdraw their applications for admission based on case law and internal practices." *Id.* The Board of Immigration Appeals ("BIA") provided guidance for the exercise of such discretion in a precedential opinion, *Matter of Gutierrez*, 19 I. & N. Dec. 562 (BIA 1988). There, a noncitizen attempted fraudulent entry into the United States and was subsequently brought before an IJ to determine whether he was excludable.[4] *Id.* at 563. At the hearing, the IJ determined the noncitizen was excludable but permitted him to withdraw his application for admission, citing "favorable equities." *Id.*

On appeal, the BIA reversed, holding that "a balancing of the equities test is not an appropriate method by which to determine whether an alien merits permission to withdraw an application for admission. *Id.* at 564. Rather, an IJ "should not allow withdrawal unless an alien, in addition to demonstrating that he

---

[4] Prior to the enactment of the IIRIRA, there were two types of removal proceedings: deportation (for noncitizens within the United States) and exclusion (for noncitizens outside the United States). *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003). Pre-IIRIRA, a person who attempted entry but did not clear customs was subject to exclusion proceedings. *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999).

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 7

possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice." *Id.* at 564–65.

Years after *Matter of Gutierrez*, Congress enacted the IIRIRA and "codified withdrawal of an application for admission as a form of discretionary relief." *Cisneros-Resendiz*, 656 F.3d at 1020. Withdrawal of application is now codified as follows: "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4).

The regulations implementing this statute limit relief to a certain class of noncitizens. Specifically, an IJ may only permit a noncitizen to withdraw his application for admission if: (1) he is an arriving alien; (2) he possesses both the intent and the means to depart immediately from the United States; and (3) he establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice. 8 C.F.R. § 1240.1(d).

### 2. Under this standard, Defendant cannot establish prejudice resulting from the asserted due process violations

Defendant asserts that he suffered prejudice when the IJs presiding over his second and third removal hearings failed to explain that he could withdraw his application for admission as an alternative to removal. ECF Nos. 66 at 9; 67 at 8. In

other words, Defendant submits that it is plausible that the IJs would have granted him such relief. The Court disagrees. While Defendant meets the first two eligibility requirements, he cannot show that it would have been in the interest of justice to permit him to withdraw his application at either his second or third removal hearing.

> i. **Defendant was an arriving alien and possessed the means and intent to immediately depart to Mexico**

At both Defendant's second and third removal hearings, he was considered an arriving alien because on both occasions he entered the United States at the San Ysidro port of entry. *See* 8 C.F.R. § 1.2 (an arriving alien is a noncitizen coming into the United States at a port-of-entry). To be sure, on the United States Department of Homeland Security's standard Notice to Appear form, there are three checkboxes to designate a noncitizen's status: (1) "You are an arriving alien;" (2) "You are an alien present in the United States who has not been admitted or paroled;" and (3) "You have been admitted to the United States, but are removable for the reasons stated below." ECF No. 40-4 at 1. Only the first box was checked on both Defendant's NTA for his second removal hearing, ECF No. 66-3, and his NTA for his third removal hearing, ECF No. 67-3.

Defendant, on both occasions, also intended to and could have immediately departed to Mexico. At Defendant's second removal hearing, he told the IJ "all I want is Mexico," and he waived the right to appeal his removal. ECF No. 66-6. His removal hearing occurred in El Centro, California (a border city), so he could have

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 9

easily departed to Mexico. At Defendant's third removal, the IJ told the noncitizen respondents that if they accepted the removals as final, "the immigration officers will send you people from Mexico back to Mexico tonight," while those who appealed would remain in the United States. ECF No. 67-5. Defendant waived his appeal. *Id.* This removal hearing occurred in San Diego, California—another border city—again establishing that Defendant could have immediately departed back to Mexico.

### ii. Defendant cannot establish that granting an application to withdraw would be in the interest of justice

In order for an IJ to permit a noncitizen to withdraw his application, the noncitizen must establish "that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice." 8 C.F.R. § 1240.1(d). Even under the more favorable standard Defendant urges the Court to apply, he cannot make this showing.,

The Government argues that in assessing whether Defendant has established plausibility, the Court should be guided by *Matter of Gutierrez* and assesses only those factors directly relating to the issue of his admissibility. ECF No. 76 at 12–15; ECF No. 77 at 11–14. Defendant contends that *Matter of Gutierrez* is not controlling and instead urges the Court to look to the factors set forth in the Inspector's Field Manual. ECF Nos. 80 at 4–6; 81 at 5–7. The Court need not resolve this issue because even under the more favorable standard set forth in the

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 10

Field Manual, Defendant cannot establish that it is plausible he would have been granted relief.

Following the enactment of the IIRIRA, the Immigration and Naturalization Service ("INS")[5] prepared an Inspector's Field Manual to guide an immigration inspector's exercise of discretion. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 (9th Cir. 2011). The Field Manual enumerates six factors that immigration officers should assess in considering a noncitizen's request to withdraw his application: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the noncitizen; (3) intent on the part of the noncitizen to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the noncitizen; and (6) other humanitarian or public interest considerations. *Id.* The Field Manual further advises that a removal order "should ordinarily be issued, rather than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant. *Id.* (citing INS Inspector's Field Manual § 17.2(a) (2001), *available at* Westlaw FIM–INSFMAN 17.2).

Under this standard, it is implausible that the IJ would have permitted withdrawal instead of issuing the second removal order. Defendant entered the

---

[5] In 2003, INS was subsumed under the Department of Homeland Security. DEP'T HOMELAND SEC., OFFICE OF IMMIGRATION STATISTICS, https://www.dhs.gov/office-immigration-statistics (last visited Nov. 10, 2021).

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS – 11

United States by fraudulently claiming to be a United States citizen—a serious immigration violation. At the time he entered, he had previously been removed just days prior. His fraudulent claim of citizenship shows deliberate intent to violate the law, and he cannot easily overcome such grounds of inadmissibility. Defendant does not claim to be elderly and does not allege that he suffered from poor health. And even to the extent that Defendant's durational history and family ties can be considered public interest considerations, they are not enough to outweigh the other factors weighing against him. It is thus implausible that Defendant would have been permitted to withdraw his application for admission in lieu of his second removal.

The same is true of Defendant's third removal. Defendant again fraudulently entered the United States, this time presenting a birth certificate bearing someone else's name. At the time of Defendant's third removal, he had previously been removed twice. Presenting false documents again shows intent to violate the law, and he cannot easily overcome these grounds of inadmissibility.

Considering "the Field Manual's emphasis on the disqualifying effect of obvious, deliberate fraud on the part of the applicant," Defendant cannot show that it is plausible he would have been granted relief. *Barajas-Alvarado*, 655 F.3d at 1091. Defendant has thus failed to establish prejudice and therefore cannot show that either his second or third removal orders were invalid.

//

//

//

Accordingly, **IT IS HEREBY ORDERED**:

    **1.**    Defendant's Third Motion to Dismiss, **ECF No. 66**, is **DENIED**.

    **2.**    Defendant's Fourth Motion to Dismiss, **ECF No. 67**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this 10th day of November 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge